# Exhibit C

For Registration
Fredrick Smith
Register of Deeds
Mecklenburg County, NC
Electronically Recorded
2024 Jun 03 10:19 AM         RE Excise Tax: $ 0.00
Book: 38855        Page: 825 - 838 ·    Fee: $ 64.00
Instrument Number:      2024050609

*After Recording Return To:*
Hometap Equity Partners, LLC
75 Arlington Street
Suite 500
Boston, MA 02116


*Recording Requested By:*
*Hometap Equity Partners, LLC*
Investment No.: NC366392

*Prepared By:*
Daniel Amato
Hometap Equity Partners, LLC
75 Arlington Street, Suite 500
Boston, MA 02116

Parcel ID: 20516847

C-NC887617

_____[Space Above This Line For Recording Data] _____


**Investment Amount: $34,000.00**

### DEED OF TRUST AND SECURITY AGREEMENT

This DEED OF TRUST AND SECURITY AGREEMENT, together with any riders (this **"Security Instrument"**), is made as of 05/28/2024 (**"Signing Date"**), by and among Bryan L. Bott (the **"Owner/Grantor"**), ClearEdge Title (**"Trustee"**), and Hometap Equity Partners, LLC, a Delaware limited liability company, and its successors and assigns (**"Hometap/Beneficiary"**). This Deed of Trust and Security Agreement was prepared by Daniel Amato, with an address of: c/o Hometap, 75 Arlington Street, Suite 500, Boston, MA 02116.

### RECITALS

A.     This Security Instrument is given in connection with the execution of the Option Purchase Agreement by and between Owner and Hometap (the **"Option Agreement"**) of even date, by which Owner grants and conveys to Beneficiary the option to purchase an undivided percentage interest in that certain real property and improvements thereof located at 9316 Ainslie Downs Street, Charlotte, NC 28273 and further described on Exhibit A attached hereto (the **"Property"**).

B.     Beneficiary desires to secure the rights granted to it in the Option Agreement and the performance of the Obligations (as defined below).

C.     This Security Instrument is given pursuant to the Option Agreement, and payment fulfillment, and performance of the obligations due under the Option Agreement are secured by this Security Instrument- in accordance with the terms set forth herein.

Submitted electronically by "ClearEdge Title, Inc."
in compliance with North Carolina statutes governing recordable documents
and the terms of the submitter agreement with the Mecklenburg County Register of Deeds.

D.       Capitalized terms used in this Security Instrument have the meanings provided in this Security Instrument, or if not defined in this Security Instrument, in the Option Agreement. The Option Agreement and this Security Instrument are collectively referred to as the "**Hometap Homeowner Agreement.**"

**TERMS**

1.       Grant. OWNER HEREBY IRREVOCABLY AND UNCONDITIONALLY grants and conveys to Trustee, and its successors and assigns, in trust, a security interest, with POWER OF SALE, for the benefit of Beneficiary, as beneficiary, and its successors and assigns, in and to the Property, to have and to hold the Property unto Trustee and Trustee's successors and assigns forever, together with all improvements, replacements, and additions now or hereafter erected on the Property, all easements, appurtenances, and fixtures now or hereafter a part of the Property, and all rents, issues, profits, and proceeds, including insurance and condemnation proceeds, from the Property.

OWNER COVENANTS that Owner is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Owner warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

PROVIDED, HOWEVER, these presents are upon the express condition that, if Owner shall well and truly (a) pay to Beneficiary the Hometap Share at the time and in the manner provided in the Option Agreement, this Security Instrument, and the other Investment Documents, (b) perform the Obligations as set forth in the Option Agreement, this Security Instrument, and the other Investment Documents, and (c) abide by and comply with each and every covenant and condition set forth in the Option Agreement, this Security Instrument, and the other Investment Documents, these presents and the estate hereby granted shall cease, terminate, and be void; *provided, however*, that Owner's obligation to indemnify and hold harmless Beneficiary pursuant to the provisions hereof shall survive any such payment and release.

2.       Secured Obligations. Owner makes the grant and conveyance set forth in Section 1 to secure the following:

      (a)       Owner's performance of each of its obligations in the Option Agreement;

      (b)       Beneficiary's rights under the Option Agreement;

      (c)       Owner's payment obligations in the Option Agreement, including:

            (i)       Payment of the Hometap Share owed to Beneficiary pursuant to the terms of the Option Agreement;

            (ii)       Payment of all Option Fees owed to Beneficiary pursuant to Section 6.1 of the Option Agreement;

            (iii)       Payment of all insurance proceeds owed to Beneficiary pursuant to Section 6.1 of the Option Agreement;

            (iv)       Payment of all condemnation proceeds owed to Beneficiary pursuant to Section 6.1 of the Option Agreement;

Case 1:26-cv-00515    Document 1-3    Filed 06/03/26    Page 3 of 15

(v)     Payment of the liquidated damages pursuant to <u>Section 7.4</u> of the Option Agreement;

(vi)     Reimbursement of any expenditures made by Beneficiary pursuant to <u>Section 6.1</u> and <u>Section 7.2</u> of the Option Agreement; and

(d)     Payment of all costs, fees, and expenses (including, as allowed by applicable law, court and other dispute resolution costs, attorneys' and experts' fees and costs, and fees and disbursements of in-house counsel) (collectively, "**Legal Fees**") incurred by Beneficiary in the enforcement and collection of the obligations listed above and the protection of Beneficiary's related rights, whether such costs, fees, and expenses are incurred in any state, federal, appellate, or bankruptcy court or otherwise and whether or not litigation or arbitration is commenced. Legal Fees include Legal Fees incurred in any state, federal, appellate, or bankruptcy court and in any bankruptcy case or insolvency proceeding, of any kind in any way related to this Security Instrument, to the interpretation or enforcement of the parties' rights under this Security Instrument, or to the Property.

The foregoing obligations are referred to collectively as the "**Obligations.**"

3.     <u>Uniform Commercial Code Security Agreement and Fixture Filing</u>. This Security Instrument also is intended to be and will constitute a fixture filing financing statement and security agreement under the North Carolina Commercial Code for any items of personal property that constitute fixtures or are specified as part of the Property and that under applicable law may be subject to a security interest under the North Carolina Commercial Code. Owner grants to Beneficiary a security interest in those items to secure the performance and payment of the Obligations.

(a)     Owner agrees that Beneficiary may file this Security Instrument, or a copy of it, in the real estate records or other appropriate index and/or in the Office of the Secretary of State of North Carolina, as a financing statement for any of the items specified in the preceding paragraph as part of the Property.

(b)     This Security Instrument constitutes a financing statement filed as a fixture filing pursuant to Sections 25-9-501(a)(1) and 25-9-502(c) of the North Carolina Commercial Code, and any similar or successor provisions.

(c)     Beneficiary may file such extensions, renewals, amendments, and releases as are appropriate to reflect the status of its security interest.

(d)     Owner will pay all costs, fees, and expenses of filing such financing statements and any extensions, renewals, amendments, and releases of such statements, and will pay all costs, fees, and expenses of any record searches for financing statements that Beneficiary may require.

(e)     Upon an Event of Default, Beneficiary will have the remedies of a secured party under the North Carolina Commercial Code and may also take the actions provided in <u>Section 7</u> of the Option Agreement. In exercising any of these remedies and taking any of these actions, Beneficiary may proceed against the Property's items of real property, fixtures or improvements separately or together and in any order whatsoever without in any way affecting the availability of Beneficiary's remedies under the North Carolina Commercial Code or the actions available in <u>Section 7</u> of the Option Agreement.

4.     <u>Absolute Assignment of Leases and Rents</u>. Owner absolutely and unconditionally assigns to Beneficiary all of Owner's right, title, and interest in and to all current and future leases, subleases, and licenses relating to the use, occupancy, or enjoyment of all or any part of the Property and all rents, income,

*Hometap (v. 7.1) – Deed of Trust and Security Agreement – North Carolina*                    *Page 3*

Case 1:26-cv-00515   Document 1-3   Filed 06/03/26   Page 4 of 15

revenues, profits, proceeds, and earnings now or hereafter payable with respect to the ownership, use, or occupancy of the Property (collectively, **"Rents"**); it being intended by Owner that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.

(a) Owner gives to and confers upon Beneficiary the right, power, and authority, during the continuance of this Security Instrument, to collect the Rents, reserving the right upon an Event of Default, Owner's failure to perform any Obligation timely, or a breach of any agreement of Owner in this Security Instrument, to collect and retain the Rents, as they become due and payable.

(b) Upon an Event of Default, Owner's failure to perform any Obligation timely, or a breach of any agreement of Owner in this Security Instrument, Hometap may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the Obligations, enter upon and take possession of the Property or any part of it, in its own name sue for or otherwise collect the Rents, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including Legal Fees, to the Obligations, and in such order as Hometap may determine.

(c) The entering upon and taking possession of the Property, the collection of the Rents, issues, and profits and the application of the Rents, issues, and profits pursuant to this Security Instrument, will not cure or waive any breach or notice of default under this Security Instrument or invalidate any act done pursuant to such notice.

(d) Nothing in this Section will permit Owner to lease or rent the Property in contravention of any provision of the Option Agreement; nor will anything in this Section modify any provision in the Option Agreement relating to the use, lease, rent, or occupancy of the Property.

5. Covenants of Owner Regarding the Property. Owner agrees as follows:

(a) To appear in and defend any action, suit, or proceeding purporting to affect the security of this Security Instrument or the rights or powers of Beneficiary; and to pay all costs, fees, and expenses of Beneficiary (including cost of evidence of title, Trustee's fees, and Legal Fees) incurred: (i) in any state, federal, appellate, or bankruptcy court, in any action, suit, or proceeding in which Beneficiary may appear, and in any action, suit, or proceeding brought by Beneficiary to foreclose this Security Instrument or to collect the Obligations or to protect Beneficiary's rights under this Security Instrument or the Option Agreement; and/or (ii) in connection with the enforcement of any provision of this Security Instrument or in connection with foreclosure upon the collateral granted under this Security Instrument, whether or not an action or suit is filed.

(b) To pay at least ten (10) days before delinquency all taxes and assessments affecting the Property and all encumbrances, charges, and liens, with interest, on the Property (or any part of the Property), which are prior or could obtain priority to the lien or to the rights granted under this Security Instrument, and all costs, fees, and expenses of this Security Instrument.

(i) If Owner fails to make any payment or to do any act as provided in this Security Instrument, Beneficiary may, but will not be obligated to, make the payment or do any such act, and any such payment and related expenses, including Legal Fees, will also be secured by this Security Instrument.

(ii) Such payments made or actions taken by Beneficiary will not require notice to, or demand on, Owner and will not release Owner from any obligation under this Security Instrument.

Case 1:26-cv-00515   Document 1-3   Filed 06/03/26   Page 5 of 15

(iii)     Beneficiary will have the following related rights and powers: (A) to enter upon the Property for the foregoing purposes, (B) to appear in and defend any action or proceeding purporting to affect the Property or the rights or powers of Beneficiary under this Security Instrument, (C) to pay, purchase, contest, or compromise any encumbrance, charge, or lien that in the judgment of Beneficiary appears to be prior or superior to this Security Instrument, and (D) to employ counsel and to pay such counsel necessary expenses and costs, including Legal Fees.

(c)     To pay immediately upon demand all sums expended by Beneficiary related to this Security Instrument and to pay interest on any of such amounts demanded by Beneficiary at a rate not to exceed the maximum rate allowed by law at the time of such demand.

6.     Power of Attorney. Owner irrevocably appoints Hometap as Owner's agent and attorney-in-fact (such agency being coupled with an interest). As agent and attorney-in-fact, Beneficiary may, in Beneficiary's name or in the name of Owner, prepare, execute, and file or record financing statements, continuation statements, applications for registration, and similar documents to create, perfect, or preserve any of Beneficiary's security interests and rights in or to any of the Property. Upon an Event of Default, Owner's failure to perform any Obligation timely, or a breach of any agreement of Owner in this Security Instrument, Beneficiary may take any other action that may be required or desired of Owner, including the ability to advertise and solicit the Property for sale, encumber the Property by obtaining loans secured by liens on the Property to raise funds deemed required or advisable to improve, repair, and prepare the Property for sale, and sell and convey the entire interest in, and title to, the Property; *provided, however*, that Hometap as agent and attorney-in-fact will be accountable only for such funds as are actually received by Hometap.

7.     Default and Foreclosure. Upon an Event of Default, Beneficiary may declare all performance and Obligations secured by this Security Instrument immediately due by delivery to Owner of a written declaration of default. If any Event of Default has occurred and is continuing, Hometap may take any or all of the following actions, at the same or at different times:

(a)     Possession. Beneficiary may enter upon and take possession of the Property; lease, rent and let the Property; and receive all the Rents, income, issues, and profits and apply the same to satisfy any Obligation. Hometap is granted full power and authority to do any act or thing which Owner or its successors or assignees who may then own the Property might or could do in connection with the ownership, use, and maintenance of the Property. This covenant becomes effective either with or without any action brought to foreclose upon the Property and without applying for a receiver of the Rents, if any. Should the Rents or any part thereof be assigned without the consent of Beneficiary, then this Security Instrument will, at the option of Beneficiary, become due and payable immediately, anything herein contained to the contrary notwithstanding.

(b)     Appointment of Receiver. Beneficiary may have a receiver of the Rents (including an Asset Administrator), income, issues, and profits of the Property appointed without the necessity of proving either the depreciation or the inadequacy of the value of the security or the insolvency of Owner or any other person who may be legally or equitably liable for the Obligations, and Owner and each such person waive such proof and consent to the appointment of a receiver.

(c)     Fair Rental Payments. If Owner or any subsequent owner is occupying the Property or any part the Property, it is agreed that the occupants will pay Beneficiary the amount of rent requested by Hometap in advance each monthly, and for the use of personal property covered by this Security Instrument.

(d)     Excess Monies. Beneficiary may apply on account of the unsatisfied Obligations owed to Beneficiary after a foreclosure sale of the Property, whether or not a deficiency action has or will be instituted, any unexpended monies still retained by Beneficiary that were paid by Owner to Beneficiary or from the proceeds of such sale (i) for the payment of, or as security for, the payment of taxes, assessments, municipal or governmental rates, charges, impositions, liens, water or sewer rents, or insurance premiums, if any, or (ii) in order to secure the performance of some act by Owner.

(e)     Remedies at Law or Equity. Beneficiary may take any of the remedies otherwise available to it as a matter of law, equity or otherwise.

(f)     Statutory Power of Sale. To the extent permitted by applicable law:

(i)     Beneficiary will have the power to sell the Property at a nonjudicial foreclosure sale. In connection with the sale, Beneficiary may declare all performance and Obligations immediately due by delivery to Owner of a written declaration of default. Beneficiary will give notice of default to Owner prior to acceleration following an Event of Default. The notice will specify: (A) the default; (B) the action required to cure the Event of Default; (C) a date by which the Event of Default must be cured; and (D) that failure to cure the Event of Default on or before the date specified in the notice may result in acceleration of the performance and Obligations secured by this Security Instrument and sale of the Property. The notice will further inform Owner of any right to cure after acceleration and the right to assert in the foreclosure proceeding the nonexistence of an Event of Default or any other defense of Owner to acceleration and sale. If the Event of Default is not cured on or before the date specified in the notice, Beneficiary at its option may require immediate performance in full of all Obligations without further demand and may invoke the power of sale and any other available remedies not prohibited by applicable law. Beneficiary will be entitled to collect all costs, fees, and expenses incurred in pursuing the remedies provided in this Security Instrument, including reasonable attorneys' fees, Trustee's fees, and costs of title evidence.

(ii)     If Beneficiary invokes the power of sale, and if it is determined in a hearing held in accordance with applicable law that Trustee can proceed to sale, Trustee will take such action regarding notice of sale and will give such notices to Owner and to other persons as applicable law may require.

(iii)     After the time required by applicable law and after publication of the notice of sale, Trustee, without demand on Owner, will sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines.

(iv)     Trustee will deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts will be conclusive proof of their truthfulness. Any person, including Owner or Beneficiary, may purchase the Property at any sale.

(v)     After deducting all costs, fees, and expenses (including Legal Fees, Trustee's fees of 5% of the gross sale price, and cost of evidence of title in connection with the sale), Trustee will apply the proceeds of the sale to payment of: first, to all sums expended under the terms of this Security Instrument, not then repaid, with accrued interest, if any, at the amount allowed by applicable law in effect on the Signing Date of this Security Instrument; second, to other sums then secured by this Security Instrument and senior to Beneficiary's interest; third, the

Case 1:26-cv-00515    Document 1-3    Filed 06/03/26    Page 7 of 15

Hometap Share to Beneficiary; and fourth, the remainder, if any, to the person or persons legally entitled to it.

(vi)     Notice provided to Owner under this Security Instrument will be to the address specified in this Security Instrument unless otherwise required by applicable law.

(vii)     Exercise of Beneficiary's remedies under this Security Instrument will be in compliance with applicable law.

8.     Late Performance. By accepting performance of any Obligation after its due date, Beneficiary does not waive its right either to require prompt performance when due of all other Obligations or to declare a breach or default for such failure to perform.

9.     Beneficiary's Powers. At any time and from time to time, without liability and without notice, upon written request of Owner and presentation of this Security Instrument, and without affecting the personal liability of any person for the performance of the Obligations, Beneficiary may: (a) release any part of the Property; (b) consent to the making of any map or plat of the Property; (c) join in granting any easement on the Property; and (d) join in any extension agreement or any agreement subordinating the lien or charge of this Security Instrument.

10.     Successors. This Security Instrument applies to, inures to the benefit of, and binds all parties to this Security Instrument, their heirs, legatees, devisees, administrators, executors, and permitted successors and assigns. The terms **"Hometap"** or **"Beneficiary"** will include any successor or assign of Hometap's rights in the Option Agreement and in this Security Instrument, whether or not named as Hometap in this Security Instrument. Absent Beneficiary's prior written consent, which consent may be withheld in its sole discretion, Owner may not assign or otherwise transfer this Security Instrument.

11.     Interpretation. In this Security Instrument, whenever the context so requires, the masculine gender includes the feminine and/or the neuter, and the singular number includes the plural. Also, in this Security Instrument, the term "include" or "including" means without limitation by reason of enumeration.

12.     Joint and Several Liability. If more than one person signs this Security Instrument as Owner, the obligations of each signatory will be joint and several.

13.     Multiple Owners. If there are multiple Owners of the Property:

(a)     this Security Instrument must be signed by each Owner;

(b)     all rights and powers specified for Owner in this Security Instrument must be approved and exercised unanimously by each Owner;

(c)     each Owner will be jointly and severally liable for all liabilities and Obligations;

(d)     notice required to be given by, or to, each Owner will be deemed adequately given if given by or to any Owner using the contact information set forth in this Security Instrument; and

(e)     Beneficiary may treat any notice received from any Owner as notice from all Owners.

14.     Incorporation by Reference. Exhibit A to this Security Instrument is incorporated by this reference.

Case 1:26-cv-00515   Document 1-3   Filed 06/03/26   Page 8 of 15

15. <u>Extent of Lien</u>. The lien granted under this Security Instrument will encumber Owner's entire interest in the Property, notwithstanding the fact that the Option Agreement relates to only a fractional interest in the Property.

16. <u>No Merger</u>. So long as any of the Obligations remain outstanding and undischarged, unless Beneficiary otherwise consents in writing, the fee estate of Owner in the Property or any part of the Property (including the estate of Beneficiary after exercising the Option) will not merge, by operation of law or otherwise, with any other estate in the Property or any part of it, but will always remain separate and distinct, notwithstanding the union of the fee estate and such other estate in Beneficiary or in any other person.

17. <u>Release</u>. Following payment of all amounts secured by this Security Instrument, Beneficiary or Trustee will cancel this Security Instrument. If Trustee is requested to release this Security Instrument, all contracts evidencing debt or Obligations secured by this Security Instrument will be surrendered to Trustee. Owner will pay any recordation costs. Beneficiary may charge Owner a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

18. <u>Subordination of Homestead and Waivers</u>. If Owner has acquired before the Signing Date or acquires on or after the Signing Date an estate of homestead in the Property, Owner agrees, to the fullest extent permitted by applicable law, that such homestead estate is subordinated in all respects to this Security Instrument and the amount of any Obligation owed and to all renewals, extensions, and modifications of any Hometap Homeowner Agreement, and that such homestead estate is subject to all of the rights of Beneficiary under the Option Agreement and all renewals, extensions, and modifications of the Option Agreement, and is subordinate to the lien evidenced by this Security Instrument and all renewals, extensions, and modifications of this Security Instrument. Owner waives and relinquishes all rights of curtesy and dower in the Property.

19. <u>Substitute Trustee</u>. In accordance with applicable law, Beneficiary may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee will succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

20. <u>Notice of Option Purchase Agreement</u>. Owner hereby provides notice that Owner and Beneficiary have entered into the Option Agreement, as more particularly described in <u>Exhibit B</u> attached hereto and incorporated herein by this reference as if set forth in full. The Option Agreement contains certain covenants and promises to or for the benefit of Beneficiary. The Option Agreement is irrevocable by Owner and expires on 06/03/2034. Every person or entity who now or hereafter owns or acquires any right, title or interest in or to any portion of the Property is and shall be conclusively deemed to have consented and agreed to every restriction, provision, covenant, right and limitation contained in the Option Agreement, whether or not such person or entity expressly assumes such obligations or whether or not any reference to the Option Agreement is contained in the instrument conveying such interest in the Property to such person or entity.

21. <u>Notices</u>. All notices or other written communications hereunder shall be delivered in accordance with the applicable terms and conditions of the Option Agreement. Notices shall be sent to the address of the other party listed below as follows, unless a party has been notified by the other party in writing of a substitute address:

Case 1:26-cv-00515   Document 1-3   Filed 06/03/26   Page 9 of 15

**Hometap/Grantee:**

Hometap Equity Partners, LLC
75 Arlington Street, Suite 500
Boston, MA 02116
Attention: Legal Department

**Owner/Grantor:**

Bryan L. Bott
9316 Ainslie Downs Street
Charlotte, NC 28273

**Trustee:**

ClearEdge Title
2605 East Enterprise Rd, Suite 270
Clearwater, FL 33759

22.    Future Advances. This Security Instrument is given wholly or partly to secure future advances and/or future obligations that may be made or incurred under this Security Instrument or the Option Agreement. The maximum principal amount that may be secured by the Security Instrument solely related to future advances and/or future obligations at any one time is $34,000.00. Any additional amounts advanced by Beneficiary pursuant to the provisions of this Security Instrument or the Option Agreement shall be deemed necessary expenditures for the protection of the security. The period within which future advances may be made and future obligations may be incurred, is the period between the date hereof and the date ten (10) years from the date of this Security Instrument. All future advances and future obligations shall be considered to be made or incurred pursuant to the requirements of North Carolina General Statutes Section 45-67, et seq., and any amendments thereto.

23.    Attorneys' Fees. Any provisions of this Security Instrument or any other Investment Document providing for the payment of "attorneys' fees," "reasonable attorneys' fees," or other words or provisions of similar import, shall mean, with respect to Beneficiary, the reasonable expenses of such person actually incurred at its counsels' customary hourly rates to enforce or collect any portion of the Obligations including, without limitation, reasonable arbitration, paralegals', attorneys', and experts' fees and expenses whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding or in any appellate or bankruptcy proceeding. Any determination of attorneys' fees owed hereunder shall be computed without regard to North Carolina General Statutes Section 6-21.2 or any other statutory presumption. The provisions of North Carolina General Statutes Section 45-45.1, and any similar statute enacted in replacement or substitution thereof, are hereby waived by Owner and shall be inapplicable to this Security Instrument and the other Investment Documents.

*[Signature Pages Follow]*

Case 1:26-cv-00515    Document 1-3    Filed 06/03/26    Page 10 of 15

READ THIS DOCUMENT CAREFULLY BEFORE SIGNING IT. ALL PRIOR ORAL, ELECTRONIC, AND WRITTEN COMMUNICATIONS AND AGREEMENTS FROM OR WITH HOMETAP, INCLUDING ALL CORRESPONDENCE, OFFER LETTERS, PRINTED MATERIALS, AND DISCLOSURES ARE MERGED INTO AND SUPERSEDED AND REPLACED BY THIS SECURITY INSTRUMENT, THE OPTION AGREEMENT, AND THE INVESTMENT DOCUMENTS, AND THE OTHER WRITTEN AGREEMENTS MADE BY AND BETWEEN OWNER AND BENEFICIARY AS OF THE EFFECTIVE DATE.

OWNER DECLARES THAT OWNER HAS READ THIS DEED OF TRUST AND SECURITY AGREEMENT, UNDERSTANDS IT, HAS RECEIVED A COMPLETELY FILLED-IN COPY OF IT WITHOUT CHARGE THEREFOR, AND HAS SIGNED IT AS OF THE SIGNING DATE.

The undersigned Owner(s) requests that a copy of any Notice of Default or Notice of Sale under this Security Instrument be mailed to the Owner at the Owner's address set forth in Section 21 above.

IN WITNESS WHEREOF, each undersigned Grantor has executed this Deed of Trust and Security Agreement under seal as of the Signing Date.

**GRANTORS:**

By: _Bryan L. Bott_
　　Bryan L. Bott

Date: _5/28/2024_

Case 1:26-cv-00515　　Document 1-3　　Filed 06/03/26　　Page 11 of 15

Acknowledgment Certificate

Mecklenburg County, North Carolina

I certify that the following person(s) personally appeared before me this day, each acknowledging to me

that he or she signed the foregoing document: Bryan L. Bott.

Date: May 28, 2024

Official Signature of Notary

(Official Seal)

> BEVERLY D NEWMAN
> Notary Public - North Carolina
> Mecklenburg County
> My Commission Expires Aug 9, 2024

Beverly D Newman, Notary Public
Notary's printed or typed name

My commission expires: 8/9/2024

## EXHIBIT A

## LEGAL DESCRIPTION

Real property described as follows:

All that certain lot, parcel of land situated in the City of Charlotte, Mecklenburg County, North Carolina and more particularly described as follows:

BEING all of Lot 49 in HADLEY PART AT ARROWOOD STATION as same is shown on a map thereof recorded in Map Book 62, page 269 in the Mecklenburg Public Registry.

Parcel ID / APN: 20516847

Case 1:26-cv-00515    Document 1-3    Filed 06/03/26    Page 13 of 15

## EXHIBIT B

## NOTICE OF OPTION

This Notice of Option ("**Option Notice**") provides notice of the Option Purchase Agreement entered into as of 05/28/2024 ("**Signing Date**"), by and between Bryan L. Bott and Hometap ("**Option Agreement**"), and supplements the Security Instrument of the same date between the parties. Capitalized terms used in this Option Notice shall have the meanings specified herein, or if not defined herein, in the Option Agreement or the Security Instrument.

## RECITALS

A.      Owner hereby declares that as of the Signing Date, Owner and Beneficiary have entered into that certain unrecorded Option Agreement, which is hereby incorporated into this Option Notice as if set forth in full, pursuant to which Owner grants and conveys to Beneficiary the option to purchase an undivided percentage interest of fee simple title ownership in and to the Property. In consideration for granting and conveying the Option to Beneficiary, Beneficiary paid to Owner the Investment Amount. The Option is irrevocable by Owner and expires on 06/03/2034.

B.      In the Option Agreement, Owner has made certain covenants and promises to, or for the benefit of, Beneficiary in connection with the Option and the Property, all as more particularly described in and on the terms and conditions stated in the Option Agreement.

C.      Owner has executed this Option Notice to give notice of the Option Agreement and certain rights and responsibilities of Owner as to the Beneficiary, as well as the covenants and promises set forth in the Option Agreement that run with the land and will be binding upon any party who acquires Owner's interest in the Property, so long as the Option Agreement has not expired or been terminated.

## TERMS

1.      Notice. Every person or entity who now or later owns or acquires any right, title, or interest in or to any portion of the Property is and shall be conclusively deemed to have consented and agreed to every restriction, provision, covenant, right, and limitation contained in the Option Agreement and this Option Notice, whether or not such person or entity expressly assumes such restrictions, provisions, covenants, rights, and limitations or whether or not any reference to the Option Agreement or this Option Notice is contained in the instrument conveying such interest in the Property to such person or entity.

2.      Covenants. The Option Agreement covenants are deemed to be covenants running with the land, so as to give it the broadest possible application, and include, without limitation:

(a)      Restrictions on Owner's right to transfer the Property without giving proper written notice to Beneficiary and requirements that Owner comply with specific sale procedures set forth in the Option Agreement;

(b)      Requirements that Owner maintain insurance on the Property against certain hazards and risks;

(c)      Restrictions on Owner's ability to increase the amount of debt to third parties secured by liens on the Property as specified in the Option Agreement;

(d)      Restrictions on the Owner's ability to rent the Property;

Case 1:26-cv-00515    Document 1-3    Filed 06/03/26    Page 14 of 15

(e)      Requirements that Owner keep Property free of liens not approved by Beneficiary; and

(f)      Requirements that Owner protect and maintain the Property.