# Exhibit D

FILED ELECTRONICALLY
CHATHAM COUNTY NC
LUNDAY A. RIGGSBEE
REGISTER OF DEEDS
========================
FILED        Jul 20, 2021
AT              02:39:40 PM
BOOK               02231
START PAGE          0991
END PAGE            1001
INSTRUMENT #       11284
EXCISE TAX         $0.00

*After Recording Return To:*
Hometap Equity Partners, LLC
800 Boylston Street
16th Floor
Boston, MA 02199


*Recording Requested By:*
*Hometap Investment Partners II, L.P.*
Investment No.: NC251339


Prepared by: Adam Jaskievic
Hometap Equity Partners LLC
800 Boylston Street, 16th Floor
Boston, MA 02199


PARCEL ID : 0018105


C-NC770360

_____[Space Above This Line For Recording Data]_____


Investment Amount: **$18,000.00**


## DEED OF TRUST AND SECURITY AGREEMENT

This DEED OF TRUST AND SECURITY AGREEMENT, together with any riders (this **"Security Instrument"**), is made as of 07/15/2021 (**"Signing Date"**), by and among Robert C. Batchelor ＊ (the **"Owner/Grantor"**), ClearEdge Title (**"Trustee"**), and Hometap Investment Partners II, L.P., a Delaware limited partnership, and its successors and assigns (**"Hometap/Beneficiary"**). Capitalized terms used in this Security Instrument have the meanings provided in this Security Instrument, or if not defined in this Security Instrument, in the Option Purchase Agreement by and between Owner and Hometap (the **"Option Agreement"**) of even date. The Option Agreement, Memorandum of the Option Purchase Agreement, and this Security Instrument are collectively referred to as the **"Hometap Homeowner Agreement."** ＊ a single man

This Deed of Trust and Security Agreement was prepared by Adam Jaskievic, with an address of: c/o Hometap, 800 Boylston Street, 16th Floor, Boston, MA 02199.

1. <u>Grant</u>.

OWNER HEREBY IRREVOCABLY grants and conveys to Trustee, and its successors and assigns, in trust, a security interest, with power of sale, for the benefit of Hometap, as beneficiary, and its successors and assigns, in and to the property located at 2727 Rosser Road, Bear Creek, NC 27207 and further described on <u>Exhibit A</u> attached hereto (the **"Property"**), to have and to hold the Property unto Trustee and Trustee's successors and assigns forever, together with all improvements, replacements, and additions now or hereafter erected on the Property, all easements, appurtenances, and fixtures now or

*Hometap – Deed of Trust and Security Agreement – North Carolina (v. 5.0)*                    *Page 1 of 12*

Submitted electronically by "ClearEdge Title, Inc."
in compliance with North Carolina statutes governing recordable documents
and the terms of the submitter agreement with the Chatham County Register of Deeds.

hereafter a part of the Property, and all rents, issues, profits, and proceeds, including insurance and condemnation proceeds, from the Property.

OWNER COVENANTS that Owner is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Owner warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

2. Secured Obligations.

Owner makes the grant and conveyance set forth in Section 1 to secure the following:

(a) Owner's performance of each of its obligations in the Hometap Homeowner Agreement;

(b) Hometap's rights under the Hometap Homeowner Agreement;

(c) Homeowner's payment obligations in the Hometap Homeowner Agreement, including:

(i) Payment of the Hometap Share owed to Hometap pursuant to the terms of the Option Agreement;

(ii) Payment of all Option Fees owed to Hometap pursuant to Section 6.1 of the Option Agreement;

(iii) Payment of all insurance proceeds owed to Hometap pursuant to Section 6.1 of the Option Agreement;

(iv) Payment of all condemnation proceeds owed to Hometap pursuant to Section 6.1 of the Option Agreement;

(v) Payment of the liquidated damages pursuant to Section 7.4 of the Option Agreement;

(vi) Reimbursement of any expenditures made by Hometap pursuant to Section 6.1 and Section 7.2 of the Option Agreement; and

(d) Payment of all costs, fees, and expenses (including, as allowed by applicable law, court and other dispute resolution costs, attorneys' and experts' fees and costs, and fees and disbursements of in-house counsel) (collectively, "Legal Fees") incurred by Hometap in the enforcement and collection of the obligations listed above and the protection of Hometap's related rights, whether such costs, fees, and expenses are incurred in any state, federal, appellate, or bankruptcy court or otherwise and whether or not litigation or arbitration is commenced. Legal Fees include Legal Fees incurred in any state, federal, appellate, or bankruptcy court and in any bankruptcy case or insolvency proceeding, of any kind in any way related to this Security Instrument, to the interpretation or enforcement of the parties' rights under this Security Instrument, or to the Property.

The foregoing obligations are referred to collectively as the **"Obligations."**

Case 1:26-cv-00515   Document 1-4   Filed 06/03/26   Page 3 of 12

3. <u>Uniform Commercial Code Security Agreement and Fixture Filing</u>. This Security Instrument also is intended to be and will constitute a fixture filing financing statement and security agreement under the North Carolina Commercial Code for any items of personal property that constitute fixtures or are specified as part of the Property and that under applicable law may be subject to a security interest under the North Carolina Commercial Code. Owner grants to Hometap a security interest in those items to secure the performance and payment of the Obligations.

(a) Owner agrees that Hometap may file this Security Instrument, or a copy of it, in the real estate records or other appropriate index and/or in the Office of the Secretary of State of North Carolina, as a financing statement for any of the items specified in the preceding paragraph as part of the Property.

(b) This Security Instrument constitutes a financing statement filed as a fixture filing pursuant to Sections 25-9-501(a)(1) and 25-9-502(c) of the North Carolina Commercial Code, and any similar or successor provisions.

(c) Hometap may file such extensions, renewals, amendments, and releases as are appropriate to reflect the status of its security interest.

(d) Owner will pay all costs, fees, and expenses of filing such financing statements and any extensions, renewals, amendments, and releases of such statements, and will pay all costs, fees, and expenses of any record searches for financing statements that Hometap may require.

(e) Upon an Event of Default, Hometap will have the remedies of a secured party under the North Carolina Commercial Code and may also take the actions provided in <u>Section 7</u> of the Option Agreement. In exercising any of these remedies and taking any of these actions, Hometap may proceed against the Property's items of real property, fixtures or improvements separately or together and in any order whatsoever without in any way affecting the availability of Hometap's remedies under the North Carolina Commercial Code or the actions available in <u>Section 7</u> of the Option Agreement.

4. <u>Absolute Assignment of Leases and Rents</u>. Owner absolutely and unconditionally assigns to Hometap all of Owner's right, title, and interest in and to all current and future leases, subleases, and licenses relating to the use, occupancy, or enjoyment of all or any part of the Property and all rents, income, revenues, profits, proceeds, and earnings now or hereafter payable with respect to the ownership, use, or occupancy of the Property (collectively, **"Rents"**); it being intended by Owner that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.

(a) Owner gives to and confers upon Hometap the right, power, and authority, during the continuance of this Security Instrument, to collect the Rents, reserving the right upon an Event of Default, Owner's failure to perform any Obligation timely, or a breach of any agreement of Owner in this Security Instrument, to collect and retain the Rents, as they become due and payable.

(b) Upon an Event of Default, Owner's failure to perform any Obligation timely, or a breach of any agreement of Owner in this Security Instrument, Hometap may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the Obligations, enter upon and take possession of the Property or any part of it, in its own name sue for or otherwise collect the Rents, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including Legal Fees, to the Obligations, and in such order as Hometap may determine.

Case 1:26-cv-00515   Document 1-4   Filed 06/03/26   Page 4 of 12

(c)     The entering upon and taking possession of the Property, the collection of the Rents, issues, and profits and the application of the Rents, issues, and profits pursuant to this Security Instrument, will not cure or waive any breach or notice of default under this Security Instrument or invalidate any act done pursuant to such notice.

(d)     Nothing in this Section will permit Owner to lease or rent the Property in contravention of any provision of the Option Agreement; nor will anything in this Section modify any provision in the Option Agreement relating to the use, lease, rent, or occupancy of the Property.

5.     <u>Covenants of Owner Regarding the Property</u>.  Owner agrees as follows:

(a)     To appear in and defend any action, suit, or proceeding purporting to affect the security of this Security Instrument or the rights or powers of Hometap; and to pay all costs, fees, and expenses of Hometap (including cost of evidence of title, Trustee's fees, and Legal Fees) incurred:  (i) in any state, federal, appellate, or bankruptcy court, in any action, suit, or proceeding in which Hometap may appear, and in any action, suit, or proceeding brought by Hometap to foreclose this Security Instrument or to collect the Obligations or to protect Hometap's rights under this Security Instrument or the Hometap Homeowner Agreement; and/or (ii) in connection with the enforcement of any provision of this Security Instrument or in connection with foreclosure upon the collateral granted under this Security Instrument, whether or not an action or suit is filed.

(b)     To pay at least ten (10) days before delinquency all taxes and assessments affecting the Property and all encumbrances, charges, and liens, with interest, on the Property (or any part of the Property), which are prior or could obtain priority to the lien or to the rights granted under this Security Instrument, and all costs, fees, and expenses of this Security Instrument.

(i)     If Owner fails to make any payment or to do any act as provided in this Security Instrument, Hometap may, but will not be obligated to, make the payment or do any such act, and any such payment and related expenses, including Legal Fees, will also be secured by this Security Instrument.

(ii)     Such payments made or actions taken by Hometap will not require notice to, or demand on, Owner and will not release Owner from any obligation under this Security Instrument.

(iii)     Hometap will have the following related rights and powers:  (A) to enter upon the Property for the foregoing purposes, (B) to appear in and defend any action or proceeding purporting to affect the Property or the rights or powers of Hometap under this Security Instrument, (C) to pay, purchase, contest, or compromise any encumbrance, charge, or lien that in the judgment of Hometap appears to be prior or superior to this Security Instrument, and (D) to employ counsel and to pay such counsel necessary expenses and costs, including Legal Fees.

(c)     To pay immediately upon demand all sums expended by Hometap related to this Security Instrument and to pay interest on any of such amounts demanded by Hometap at a rate not to exceed the maximum rate allowed by law at the time of such demand.

6.     <u>Power of Attorney</u>.  Owner irrevocably appoints Hometap as Owner's agent and attorney-in-fact (such agency being coupled with an interest).  As agent and attorney-in-fact, Hometap may, in Hometap's name or in the name of Homeowner, prepare, execute, and file or record financing statements, continuation statements, applications for registration, and similar documents to create, perfect, or preserve any of Hometap's security interests and rights in or to any of the Property. Upon an Event of Default, Owner's failure to perform any Obligation timely, or a breach of any agreement of Owner in this Security

Case 1:26-cv-00515     Document 1-4     Filed 06/03/26     Page 5 of 12

Instrument, Hometap may take any other action that may be required or desired of Owner, including the ability to advertise and solicit the Property for sale, encumber the Property by obtaining loans secured by liens on the Property to raise funds deemed required or advisable to improve, repair, and prepare the Property for sale, and sell and convey the entire interest in, and title to, the Property; *provided, however,* that Hometap as agent and attorney-in-fact will be accountable only for such funds as are actually received by Hometap.

7. Default and Foreclosure. Upon an Event of Default, Hometap may declare all performance and Obligations secured by this Security Instrument immediately due by delivery to Owner of a written declaration of default. If any Event of Default has occurred and is continuing, Hometap may take any or all of the following actions, at the same or at different times:

(a) Possession. Hometap may enter upon and take possession of the Property; lease, rent and let the Property; and receive all the Rents, income, issues, and profits and apply the same to satisfy any Obligation. Hometap is granted full power and authority to do any act or thing which Owner or its successors or assignees who may then own the Property might or could do in connection with the ownership, use, and maintenance of the Property. This covenant becomes effective either with or without any action brought to foreclose upon the Property and without applying for a receiver of the Rents, if any. Should the Rents or any part thereof be assigned without the consent of Hometap, then this Security Instrument will, at the option of Hometap, become due and payable immediately, anything herein contained to the contrary notwithstanding.

(b) Appointment of Receiver. Hometap may have a receiver of the Rents (including an Asset Administrator), income, issues, and profits of the Property appointed without the necessity of proving either the depreciation or the inadequacy of the value of the security or the insolvency of Owner or any other person who may be legally or equitably liable for the Obligations, and Owner and each such person waive such proof and consent to the appointment of a receiver.

(c) Fair Rental Payments. If Owner or any subsequent owner is occupying the Property or any part the Property, it is agreed that the occupants will pay Hometap the amount of rent requested by Hometap in advance each monthly, and for the use of personal property covered by this Security Instrument.

(d) Excess Monies. Hometap may apply on account of the unsatisfied Obligations owed to Hometap after a foreclosure sale of the Property, whether or not a deficiency action has or will be instituted, any unexpended monies still retained by Hometap that were paid by Owner to Hometap or from the proceeds of such sale (i) for the payment of, or as security for, the payment of taxes, assessments, municipal or governmental rates, charges, impositions, liens, water or sewer rents, or insurance premiums, if any, or (ii) in order to secure the performance of some act by Owner.

(e) Remedies at Law or Equity. Hometap may take any of the remedies otherwise available to it as a matter of law, equity or otherwise.

(f) Statutory Power of Sale. To the extent permitted by applicable law:

(i) Hometap will have the power to sell the Property at a nonjudicial foreclosure sale. In connection with the sale, Hometap may declare all performance and Obligations immediately due by delivery to Owner of a written declaration of default. Hometap will give notice of default to Owner prior to acceleration following an Event of Default. The notice will specify: (A) the default; (B) the action required to cure the Event of Default; (C) a date by which the Event of Default must be cured; and (D) that failure to cure the Event of Default on or before the date specified in the

Case 1:26-cv-00515   Document 1-4   Filed 06/03/26   Page 6 of 12

notice may result in acceleration of the performance and Obligations secured by this Security Instrument and sale of the Property. The notice will further inform Owner of any right to cure after acceleration and the right to assert in the foreclosure proceeding the nonexistence of an Event of Default or any other defense of Owner to acceleration and sale. If the Event of Default is not cured on or before the date specified in the notice, Hometap at its option may require immediate performance in full of all Obligations without further demand and may invoke the power of sale and any other available remedies not prohibited by applicable law. Hometap will be entitled to collect all costs, fees, and expenses incurred in pursuing the remedies provided in this Security Instrument, including reasonable attorneys' fees, Trustee's fees, and costs of title evidence.

(ii)     If Hometap invokes the power of sale, and if it is determined in a hearing held in accordance with applicable law that Trustee can proceed to sale, Trustee will take such action regarding notice of sale and will give such notices to Owner and to other persons as applicable law may require.

(iii)     After the time required by applicable law and after publication of the notice of sale, Trustee, without demand on Owner, will sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines.

(iv)     Trustee will deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts will be conclusive proof of their truthfulness. Any person, including Owner or Hometap, may purchase the Property at any sale.

(v)     After deducting all costs, fees, and expenses (including Legal Fees, Trustee's fees of 5% of the gross sale price, and cost of evidence of title in connection with the sale), Trustee will apply the proceeds of the sale to payment of: first, to all sums expended under the terms of this Security Instrument, not then repaid, with accrued interest, if any, at the amount allowed by applicable law in effect on the Signing Date of this Security Instrument; second, to other sums then secured by this Security Instrument and senior to Hometap's interest; third, the Hometap Share to Hometap; and fourth, the remainder, if any, to the person or persons legally entitled to it.

(vi)     Notice provided to Owner under this Security Instrument will be to the address specified in this Security Instrument unless otherwise required by applicable law.

(vii)     Exercise of Hometap's remedies under this Security Instrument will be in compliance with applicable law.

8.     Late Performance. By accepting performance of any Obligation after its due date, Hometap does not waive its right either to require prompt performance when due of all other Obligations or to declare a breach or default for such failure to perform.

9.     Hometap's Powers. At any time and from time to time, without liability and without notice, upon written request of Owner and presentation of this Security Instrument, and without affecting the personal liability of any person for the performance of the Obligations, Hometap may: (a) release any part of the Property; (b) consent to the making of any map or plat of the Property; (c) join in granting any easement on the Property; and (d) join in any extension agreement or any agreement subordinating the lien or charge of this Security Instrument.

Case 1:26-cv-00515     Document 1-4     Filed 06/03/26     Page 7 of 12

10. Subordination. This Security Instrument is subordinate to and junior to the Memorandum of Option Purchase Agreement which affects the Property and is executed by Owner as "Owner" as of the same date as this Security Instrument.

11. Successors. This Security Instrument applies to, inures to the benefit of, and binds all parties to this Security Instrument, their heirs, legatees, devisees, administrators, executors, and permitted successors and assigns. The term "Hometap" will include any successor or assign of Hometap's rights in the Option Agreement and in this Security Instrument, whether or not named as Hometap in this Security Instrument. Absent Hometap's prior written consent, which consent may be withheld in Hometap's sole discretion, Owner may not assign or otherwise transfer this Security Instrument.

12. Interpretation. In this Security Instrument, whenever the context so requires, the masculine gender includes the feminine and/or the neuter, and the singular number includes the plural. Also, in this Security Instrument, the term "include" or "including" means without limitation by reason of enumeration.

13. Joint and Several Liability. If more than one person signs this Security Instrument as Owner, the obligations of each signatory will be joint and several.

14. Multiple Owners. If there are multiple Owners of the Property:

(a) this Security Instrument must be signed by each Owner;

(b) all rights and powers specified for Owner in this Security Instrument must be approved and exercised unanimously by each Owner;

(c) each Owner will be jointly and severally liable for all liabilities and Obligations;

(d) notice required to be given by, or to, each Owner will be deemed adequately given if given by or to any Owner using the contact information set forth in this Security Instrument; and

(e) Hometap may treat any notice received from any Owner as notice from all Owners.

15. Incorporation by Reference. Exhibit A to this Security Instrument is incorporated by this reference.

16. Extent of Lien. The lien granted under this Security Instrument will encumber Owner's entire interest in the Property, notwithstanding the fact that the Hometap Homeowner Agreement relates to only a fractional interest in the Property.

17. No Merger. So long as any of the Obligations remain outstanding and undischarged, unless Hometap otherwise consents in writing, the fee estate of Owner in the Property or any part of the Property (including the estate of Hometap after exercising the Option) will not merge, by operation of law or otherwise, with any other estate in the Property or any part of it, but will always remain separate and distinct, notwithstanding the union of the fee estate and such other estate in Hometap or in any other person.

18. Release. Following payment of all amounts secured by this Security Instrument, Hometap or Trustee will cancel this Security Instrument. If Trustee is requested to release this Security Instrument, all contracts evidencing debt or Obligations secured by this Security Instrument will be

Case 1:26-cv-00515    Document 1-4    Filed 06/03/26    Page 8 of 12

surrendered to Trustee. Owner will pay any recordation costs. Hometap may charge Owner a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

19. <u>Subordination of Homestead and Waivers</u>. If Owner has acquired before the Signing Date or acquires on or after the Signing Date an estate of homestead in the Property, Owner agrees, to the fullest extent permitted by applicable law, that such homestead estate is subordinated in all respects to this Security Instrument and the amount of any Obligation owed and to all renewals, extensions, and modifications of any Hometap Homeowner Agreement, and that such homestead estate is subject to all of the rights of Hometap under the Hometap Homeowner Agreement and all renewals, extensions, and modifications of the Hometap Homeowner Agreement, and is subordinate to the lien evidenced by this Security Instrument and all renewals, extensions, and modifications of this Security Instrument. Owner waives and relinquishes all rights of curtesy and dower in the Property.

20. <u>Substitute Trustee</u>. In accordance with applicable law, Hometap may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee will succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. <u>Attorneys' Fees</u>. Attorneys' fees must be reasonable.

22. <u>Notices</u>. All notices or other written communications hereunder shall be delivered in accordance with the applicable terms and conditions of the Option Agreement. Notices shall be sent to the address of the other party listed below as follows, unless a party has been notified by the other party in writing of a substitute address:

**Hometap/Grantee:**

Hometap Investment Partners II, L.P.
800 Boylston Street, 16th Floor
Boston, MA 02199
Attention: Legal Department

**Owner/Grantor:**

Robert C. Batchelor

2727 Rosser Road
Bear Creek, NC 27207

**Trustee:**

ClearEdge Title
2605 East Enterprise Rd, Suite 270
Clearwater, FL 33759

*[Signature Pages Follow]*

**OWNER DECLARES THAT OWNER HAS READ THIS DEED OF TRUST AND SECURITY AGREEMENT, UNDERSTANDS IT, HAS RECEIVED A COMPLETELY FILLED-IN COPY OF IT WITHOUT CHARGE THEREFOR, AND HAS SIGNED IT AS OF THE SIGNING DATE.**

**The undersigned Owner(s) requests that a copy of any Notice of Default or Notice of Sale under this Security Instrument be mailed to the Owner at the Owner's address set forth in Section 22 above.**

IN WITNESS WHEREOF, each undersigned Grantor has executed this Deed of Trust and Security Agreement under seal as of the Signing Date.

**GRANTORS:**

By: _____

Robert C. Batchelor

Date: __7/15/2021_____

By: _____

Date: _____

Case 1:26-cv-00515     Document 1-4     Filed 06/03/26     Page 10 of 12

Acknowledgment Certificate

Chatham County, North Carolina

I certify that the following person(s) personally appeared before me this day, each acknowledging to me that he or she signed the foregoing document: ~~Deed of Trust & Security Agreement~~ DD .

Robert C. Batchelor

Date: 7\15\2021

(Official Seal)

```
DAVID DEMARCO
NOTARY PUBLIC
Chatham County
North Carolina
My Commission Expires Sep. 30, 2025
```

David DeMarco
Official Signature of Notary

DAVID DEMARCO , Notary Public
Notary's printed or typed name

My commission expires: 9\30\2025

Case 1:26-cv-00515   Document 1-4   Filed 06/03/26   Page 11 of 12

## EXHIBIT A

### LEGAL DESCRIPTION

Real property described as follows:

All those certain parcels of land in Oakland Township, Chatham County, North Carolina, and more particularly described as follows:

Tract One:

Being all of that certain tract of land as described in a deed dated August 24, 1970, from Robert Glen Willigman and wife, Lucille Singletary Willigman to Robert Lee Batchelor and wife, Carolyn Willigman Batchelor, and recorded in Deed Book 355, Page 220, Chatham County Registry, to which deed reference is hereby made for greater certainty of description.

Tract Two:

Being all of that certain tract of land as described in a deed dated October 18, 2000, from Robert Glen Willigman and wife, Lucille singletary Willigman to Robert Lee Batchelor and wife, Carolyn Willigman Batchelor, and recorded in Deed Book 842, Page 238, Chatham County Registry, to which reference is hereby made for greater certainty of description.

Parcel ID / APN: 0018105

Case 1:26-cv-00515    Document 1-4    Filed 06/03/26    Page 12 of 12