**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| BRYAN L. BOTT, ROBERT C. BATCHELOR, EDWARD ARNOLD, and JESSICA ARNOLD, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HOMETAP EQUITY PARTNERS, LLC; HOMETAP HEI FUND IV SPV II, LLC; and HOMETAP INVESTMENT PARTNERS II, L.P.,<br><br>Defendants. | Case No.: 1:26-cv-00515-UA-JEP |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY ACTION**

Defendants Hometap Equity Partners, LLC, Hometap HEI Fund IV SPV II, LLC, and Hometap Investment Partners II, L.P. (collectively, Hometap) submit this memorandum of law in support of their Motion to Compel Arbitration and Stay Action.

## INTRODUCTION

Bryan Bott, Robert Batchelor, Edward Arnold, and Jessica Arnold entered into Option Purchase Agreements with Hometap that allowed them to access the equity in their homes without taking on debt. Under the Agreements, Hometap purchased the right—an option—to later acquire a percentage ownership interest in Plaintiffs' homes. In exchange for that option, Hometap paid Plaintiffs sums that Plaintiffs were not required to repay.

The Agreements required Plaintiffs only to hold the option open and to allow Hometap its share in the homes' value should Hometap elect to exercise its option. Any money that Hometap ultimately received would depend entirely on the value of its ownership interest, not the money it paid to purchase that option.

Plaintiffs assert several claims related to the Agreements in their Amended Complaint, including claimed violations of several federal and state-law requirements for mortgage loans, a rescission remedy under the Truth in Lending Act (TILA), and requests for injunctive relief. Hometap vigorously disputes the merits of those claims. But those merits are not properly before this Court. In entering the Agreements, each of the Plaintiffs "agree[d] that any and all disputes or claims" between them and Hometap that "have arisen or may arise" would be "resolved exclusively through final and binding arbitration, rather than a court." Declaration Ex. A at 36, § 8.13(k) (as amended by North Carolina Rider); Decl. Ex. B at 23, § 8.13(a); Decl. Ex. F at 37, § 8.13(k) (as amended by North Carolina Rider). Under the Federal Arbitration Act (FAA) and North Carolina law, that agreement is binding and enforceable. This Court should enforce it by compelling this dispute to arbitration.

Trying to circumvent the arbitration provisions, Plaintiffs argue that the Agreements are residential mortgage loans subject to TILA, citing *Lyons v. PNC Bank, Nat'l Ass'n*, 26 F.4th 180, 191 (4th Cir. 2022), for the proposition that TILA "precludes pre-dispute agreements requiring the arbitration of claims related to residential mortgage loans." Am. Compl. ¶ 111. This Court should reject that effort and compel arbitration. Plaintiffs agreed

that "[a]ll issues," including such "issues relating to the scope, enforceability, and arbitrability" of the Arbitration Agreement, "are for the arbitrator to decide." Decl. Ex. A at 37, § 8.13(n) (as amended); Decl. Ex. B at 24, § 8.13(d); Decl. Ex. F at 38, § 8.13(n) (as amended). Such a commonplace delegation provision is enforceable under the FAA absent a valid challenge to the delegation provision itself. And Plaintiffs present no such challenge here. TILA's bar on arbitration only prohibits arbitrating the merits of a dispute concerning a residential mortgage loan; it does not prohibit arbitrating the threshold question whether an agreement is a residential mortgage loan to which TILA applies in the first place. *Lyons* does not hold otherwise: *Lyons* addressed whether TILA barred merits arbitration of a home equity line of credit. 26 F.4th at 183-84. It did not address who decides whether a transaction extends credit in the first place—the very question the parties here delegated to the arbitrator.

Moreover, even if this Court looked past the delegation provisions, Plaintiffs' contentions are unpersuasive. TILA does not preclude arbitration because the Agreements are not "residential mortgage loan[s]." 15 U.S.C. § 1639c(e)(1). A "loan" necessarily involves a creditor extending credit and a debtor incurring debt—an obligation to repay the amount of credit received. The Agreements impose no such obligation. What Plaintiffs call the principal of their supposed loans is just the price Hometap paid for its options, which Plaintiffs had no obligation to repay; the settlement payments Hometap ultimately received from Bott and Batchelor were not loan repayments, but a reflection of the value of Hometap's ownership interest in the properties. The Arnolds' active investment does

not change this conclusion. Whatever return Hometap may receive on that investment would reflect the value of its ownership interest, not a repayment obligation.

This Court should compel Plaintiffs' claims to individual arbitration under the FAA and stay this action pending the resolution of arbitration.

## FACTUAL BACKGROUND

Hometap offers home equity option contracts that enable homeowners to harness the equity in their homes without incurring debt. For many homeowners, that equity is a significant financial asset that is typically difficult to access. Conventional avenues include selling the home or taking on home equity loans that require repaying the principal amount plus interest. Hometap provides an alternative. Through its contracts, a homeowner can access her home's equity by receiving an upfront payment in exchange for granting Hometap an option to later acquire an ownership interest in the property.

Unlike a loan, Hometap's contract imposes no obligation to repay the initial payment and charges no interest. Instead, if exercised, the option allows Hometap only to share in any appreciation or depreciation of the home. Any proceeds Hometap may receive depend entirely on the value of the home when the option is exercised or repurchased—that is, the ownership interest that Hometap contracted for the option to acquire.

### I. Plaintiffs enter into Option Purchase Agreements with Hometap.

Plaintiffs each decided to enter into Option Purchase Agreements with Hometap to access some of their home equity, in exchange for potential equity-sharing with Hometap down the line.

Bryan Bott entered into an Agreement with Hometap on or about May 28, 2024, for his property in Charlotte, North Carolina. Decl. Ex. A (Bott Agreement); Am. Compl. ¶¶ 13, 43. Hometap paid Bott an "Investment Amount" of $34,000 to purchase the option; after fees and costs, Bott received $31,696. Decl. Ex. A (Schedule A) at 1. When the parties signed the Agreement, the property's value was $426,144. *Id.* Hometap's potential percentage ownership interest—the "Hometap Percentage"—scaled with the duration of the Agreement: 11.968% for months 1-36, 14.186% for months 37-72, and 15.957% for months 73-120. *Id.* The parties secured performance of Bott's Agreement through a Deed of Trust. Decl. Ex. C.

Robert Batchelor entered into an Agreement with Hometap on or about July 15, 2021, for his property in Bear Creek, North Carolina. Decl. Ex. B (Batchelor Agreement); Am. Compl. ¶¶ 16, 63. Hometap paid Batchelor an Investment Amount of $18,000. Decl. Ex. B (Schedule A) at 1. As with Bott's Agreement, the parties secured performance of Batchelor's Agreement through a Deed of Trust. Decl. Ex. D.

The Arnolds entered into an Agreement with Hometap on or about September 13, 2023, for their property in Charlotte, North Carolina. Decl. Ex. F (Arnold Agreement); Am. Compl. ¶¶ 18-19. Hometap paid the Arnolds an Investment Amount of $159,957. Decl. Ex. F (Schedule A) at 1. At closing, $123,846.11 of the Investment Amount was used to pay off the Arnolds' existing consumer debts and an additional $6,056.71 was deducted in fees and costs, resulting in net cash to the Arnolds of $30,036.18. *Id.* at 1-2.

The Arnolds' Hometap Percentage ranges from 26.802% to 35.736%. *Id.* at 1. The parties likewise secured performance through a Deed of Trust. Decl. Ex. G.

As option contracts, the Agreements gave Hometap the "right," but not the obligation, to exercise the Option. Decl. Exs. A, F at 5, § 2.4; Decl. Ex. B at 6, § 2.5. Hometap could exercise its option as of the Agreement's expiration date, which, unless extended, falls ten years after the Effective Date. Decl. Exs. A-B, F at 3, § 1.5.

If Hometap exercised the option, it would receive its "Hometap Share" of the home's value, calculated by multiplying the property's value by the applicable Hometap Percentage. Decl. Exs. A-B, F at 4, § 2.2. A contractual ceiling (the "Hometap Cap") limited the value of Hometap's ownership interest to a maximum equivalent of a 20% annualized return on the Investment Amount. Decl. Exs. A-B, F (Schedule A) at 3. The cap protected homeowners by operating as a ceiling on the value of Hometap's ownership interest. Meanwhile, homeowners retain their remaining share of the home's value, plus the initial option payment.

The option's exercise is neither required nor guaranteed: Hometap may elect not to exercise the option, and if it does not, and the homeowner does not repurchase it, the option simply terminates. Just as Plaintiffs retained the initial Investment Amount if the option was exercised, they also retained it if the option was not exercised.

Numerous contractual provisions reinforce the parties' shared understanding that the Agreements are not loans. The Agreements open with a bold, capitalized declaration: "**THIS IS NOT A LOAN.**" Decl. Exs. A-B, F at 1. They further explain: "**THIS IS AN**

**AGREEMENT PURSUANT TO WHICH A HOMEOWNER RECEIVES PAYMENT IN EXCHANGE FOR AN OPTION TO PURCHASE A SPECIFIED PERCENTAGE INTEREST IN THE HOMEOWNER'S HOME.**" *Id.* Under the heading "Not a Loan," the Agreements provide "that the payment of the Investment Amount by Hometap is not a loan." Decl. Exs. A-B, F at 12, § 4.1(i). Plaintiffs further agreed that "[u]nder no circumstances will the Investment Amount accrue interest, and if the Option expires, then [they] will not be obligated to return or repay the Investment Amount." *Id.* The Agreements also specify that Hometap is not a "lender" and that "[t]he Option is intended to be and will be treated for all purposes … as an economic interest and not as a loan." Decl. Exs. A-B, F at 21, § 8.4.

## II. The Agreements contain arbitration agreements and delegation provisions.

The Agreements require the parties to arbitrate any claims relating to them. These provisions are placed under the all-capitalized and underlined heading "DISPUTE RESOLUTION BY BINDING ARBITRATION." Decl. Ex. A at 36, § 8.13 (as amended); Decl. Ex. B at 23, § 8.13; Decl. Ex. F at 37, § 8.13 (as amended). That section opens with the conspicuous directive to "PLEASE READ THIS SECTION CAREFULLY AS IT AFFECTS YOUR RIGHTS." *Id.*

In this section, Hometap ("we" and "us") and Plaintiffs ("you") agreed that:

> [A]ny and all disputes or claims that have arisen or may arise between you and us, whether arising out of or relating to this Agreement or the other Investment Documents, any advertising, or any aspect of the relationship or transactions between us, will be resolved exclusively through final and binding arbitration, rather than a court, in accordance with the terms of this

> Arbitration Agreement, except that you may assert individual claims in small claims court, if your claims qualify.

Decl. Ex. A at 36, § 8.13(k) (as amended); Decl. Ex. B at 23, § 8.13(a); Decl. Ex. F at 37, § 8.13(k) (as amended). The arbitration provisions acknowledge that "[t]he Federal Arbitration Act governs the interpretation and enforcement of this Arbitration Agreement." *Id.* Plaintiffs also agreed to arbitrate their claims on an individual and non-class basis, and to waive the right to a jury trial. Decl. Ex. A at 36, § 8.13(k), (l) (as amended); Decl. Ex. B at 23-24, § 8.13(a), (b); Decl. Ex. F at 37, § 8.13(k), (l) (as amended).

The parties stipulated that "[a]rbitration will be conducted by a neutral arbitrator in accordance with the American Arbitration Association's (the 'AAA') rules and procedures, including the AAA's Consumer Arbitration Rules (collectively, the 'AAA Rules'), as modified by this Arbitration Agreement." Decl. Ex. A at 37, § 8.13(n); Decl. Ex. B at 24, § 8.13(d); Decl. Ex. F at 38, § 8.13(n). Rule 7(a) of the AAA Consumer Arbitration Rules states that "[t]he arbitrator shall have the power to rule on their own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim." Am. Arb. Ass'n, Consumer Arb. Rules and Mediation Procs. R-7(a) (2025).

The parties also agreed in the body of the Agreements that "[a]ll issues are for the arbitrator to decide, including issues relating to the scope, enforceability, and arbitrability of this Arbitration Agreement." Decl. Ex. A at 37, § 8.13(n) (as amended); Decl. Ex. B at 24, § 8.13(d).

Each Agreement further gave the homeowner a right to cancel the transaction, without cost, within three business days of signing—an opt-out right no Plaintiff exercised. Decl. Ex. A-B, F at 3, § 1.3. Each Agreement provides that the Dispute Resolution by Binding Arbitration provision survives the Agreement's termination. Decl. Ex. A, F at 22, § 8.10; Decl. Ex. B at 23, § 8.10.

## III. Despite the arbitration agreements, Plaintiffs filed a putative class action.

On June 3, 2026, Plaintiffs Bott and Batchelor filed this putative class action. *See* Compl. On August 21, 2026, Plaintiffs filed an Amended Complaint adding the Arnolds and asserting fourteen counts against Hometap, alleging violations of TILA, North Carolina lending and consumer-protection laws, a breach of the implied covenant of good faith and fair dealing, and a request for injunctive relief. *See* Am. Compl. Plaintiffs also seek, for class members like the Arnolds with unsettled investments, rescission under 15 U.S.C. § 1635, and an injunction against enforcement of the arbitration clause, class action waiver, and fee-shifting provisions. *See id.* ¶¶ 114, 132-33, 220.

## LEGAL STANDARDS

Arbitration is required under the FAA when a movant demonstrates "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002) (quotations omitted). "Whether a party

agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Id.* at 501.

A threshold question in every arbitration case is "whether an arbitration agreement exists between the parties." *Naimoli v. Pro-Football, Inc.*, 120 F.4th 380, 386 (4th Cir. 2024) (quotations omitted). The party seeking to compel arbitration must show that the non-movant "(1) had reasonable notice of an offer to enter into the contract and (2) manifested assent to it." *Id.* at 389 (quotations omitted). Once a valid agreement to arbitrate is shown, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration," including by showing that "Congress intended to preclude arbitration of [those] claims." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000).

When deciding motions to compel arbitration under the FAA, courts in this District compel arbitration "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Adams v. Citicorp Credit Servs., Inc.*, 93 F. Supp. 3d 441, 445 (M.D.N.C. 2015) (quoting Fed. R. Civ. P. 56(a)). Because the Agreements' existence, and the arbitration and delegation provisions within them, are apparent from the face of the Amended Complaint and are undisputed, there can be no genuine dispute of material fact. All that is left is for this Court to "engage in a limited review to ensure that [a] dispute is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive

scope of that agreement." *Franklin v. Duke Univ.*, 721 F. Supp. 3d 386, 394-95 (M.D.N.C. 2024) (quotations omitted).

**QUESTIONS PRESENTED**

1. Whether the Agreements' delegation provisions require that threshold issues of arbitrability—including whether TILA applies—be decided by the arbitrator.

2. Whether, alternatively, TILA's arbitration bar applies to the Agreements, which impose no repayment obligation and do not extend "credit."

3. Whether the arbitration agreements are unconscionable.

**ARGUMENT**

This Court should compel Plaintiffs to arbitrate and stay litigation pending arbitration. The FAA requires courts to enforce valid arbitration agreements according to their terms. Here, the Agreements require arbitration on all issues, including any threshold arbitrability questions. Moreover, even if the Court were to address arbitrability itself, the Agreements fall outside TILA's arbitration bar because they impose no repayment obligation and do not extend "credit," and the arbitration agreements are not unconscionable. The FAA thus requires this Court to enforce the arbitration agreements by compelling arbitration, *see* 9 U.S.C. § 4, and staying litigation pending arbitration, *id.* § 3.

## I. The FAA requires enforcing valid arbitration agreements.

The FAA reflects Congress's determination that courts must "enforce arbitration agreements according to their terms." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018).

The statute provides that a written arbitration provision in "a contract evidencing a transaction involving commerce" is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In keeping with the FAA's "liberal federal policy favoring arbitration agreements," "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Where, as here, a party resists a valid and applicable arbitration agreement, the FAA requires this Court to compel arbitration, 9 U.S.C. § 4, and to stay the litigation pending the arbitration's resolution, *id.* § 3.

## II. The Complaint provides no ground for avoiding arbitration of this dispute.

When entering into the Agreements at the center of this dispute, Plaintiffs agreed to arbitrate "any and all disputes or claims that have arisen or may arise between" them and Hometap. Decl. Ex. A at 36, § 8.13(k) (as amended); Decl. Ex. B at 23, § 8.13(a); Decl. Ex. F at 37, § 8.13(k) (as amended). Although Plaintiffs insist those arbitration agreements are unenforceable under TILA, the Agreements delegate such threshold issues of arbitrability to the arbitrator.

### A. The Agreements contain valid delegation provisions.

The Agreements' arbitration provisions commit threshold arbitrability issues to the arbitrator. Specifically, the Agreements provide that "[a]ll issues are for the arbitrator to decide, including issues relating to the scope, enforceability, and arbitrability of this

Arbitration Agreement." Decl. Ex. A at 37, § 8.13(n) (as amended); Decl. Ex. B at 24, § 8.13(d); Decl. Ex. F at 38, § 8.13(n) (as amended).

The Fourth Circuit has consistently enforced similar delegation clauses. *See Mod. Perfection, LLC v. Bank of Am., N.A.*, 126 F.4th 235, 242 (4th Cir. 2025) (collecting Fourth Circuit cases enforcing clauses tasking arbitrators with resolving "all disputes, including the scope and validity of this Arbitration Provision," "any issue concerning the validity, enforceability, or scope of this Agreement," and "[a]ll disputes … relating in any way to … the execution and delivery, construction or enforceability of this Agreement") (quotations omitted). It should do so here.

That the Agreements incorporate the AAA Rules reinforces this conclusion. Those Rules themselves delegate threshold arbitrability questions to the arbitrator. Decl. Ex. A at 37, § 8.13(n) (as amended); Decl. Ex. B at 24, § 8.13(d); Decl. Ex. F at 38, § 8.13(n) (as amended). In *Berkeley County School District v. Hub International Ltd.*, the Fourth Circuit enforced a delegation provision where the arbitration provision incorporated the AAA Rules—an approach consistent with the consensus among other circuits "that an arbitration provision's incorporation of the AAA commercial rules is a clear and unmistakable expression of the parties' intent to reserve the question of arbitrability for the arbitrator and not the court." 130 F.4th 396, 403 (4th Cir.), *cert. denied*, 146 S. Ct. 187 (2025) (collecting cases). Thus, the express delegation clause here, together with the AAA Rules incorporation, provide "clear and unmistakable evidence" of the parties' agreement to

arbitrate arbitrability. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019).

The delegation provisions extend to any dispute "arising out of or relating to" the Agreements. Decl. Ex. A at 36, § 8.13(k) (as amended); Decl. Ex. B at 23, § 8.13(a); Decl. Ex. F at 37, § 8.13(k) (as amended). That broad reach plainly encompasses Plaintiffs' claims. Whether Plaintiffs' claims in fact fall within that scope is a question reserved for the arbitrator, once a valid delegation is shown. *Berkeley Cnty.*, 130 F.4th at 403. As a result, this Court's role is limited to confirming the valid formation of the arbitration agreements before compelling arbitration.

It can do so easily. Under North Carolina law, contract formation requires an offer, acceptance, consideration, and no defenses to formation. *Adams*, 93 F. Supp. 3d at 445. Those elements are readily satisfied here: Plaintiffs acknowledge that they signed and thus entered into the Agreements, and Hometap paid each Plaintiff an Investment Amount as consideration for the option granted. Am. Compl. ¶¶ 43-44, 63-64, 80-82.[1] Hometap Equity Partners, LLC validly signed Bott's and the Arnolds' Agreements, and Hometap Investment Partners II, L.P. signed Batchelor's Agreement. Decl. Exs. A-B, F at 28-30 (signature pages). Hometap HEI Fund IV SPV II, LLC is bound as beneficiary of Bott's

[1] Independent consideration also exists by way of the parties' mutual agreement to arbitrate. *See Howard v. Oakwood Homes Corp.*, 516 S.E.2d 879, 881, *review denied*, 539 S.E.2d 288 (1999) ("Where each party agrees to be bound by an arbitration agreement, there is sufficient consideration to uphold the agreement."); *Adkins*, 303 F.3d at 501 ("[n]o consideration [is required] above and beyond the agreement to be bound by the arbitration process") (quotations omitted).

Deed of Trust. Am. Compl. ¶ 56; Decl. ¶¶ 2, 10; Decl. Ex E. All named Defendants are therefore bound by the arbitration and delegation provisions.

Absent any meritorious challenge to the validity of the delegation provisions, these provisions control and require delegating threshold arbitrability questions to an arbitrator. *See Henry Schein*, 586 U.S. at 67-68. Challenges that target the Agreements broadly—such as allegations that the Agreements are unconscionable—are for the arbitrator to decide under the delegation provisions, unless those challenges also apply to the delegation provisions in particular. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72-73 (2010); *see Mod. Perfection*, 126 F.4th at 243.

### B. Plaintiffs cannot invoke TILA to bypass the delegation provisions.

Plaintiffs contend that TILA negates the arbitration agreements that they executed. Am. Compl. ¶¶ 111-13. TILA provides that "[n]o residential mortgage loan … may include terms which require arbitration … as the method for resolving any controversy or settling any claims arising out of the transaction." 15 U.S.C. § 1639c(e)(1). Plaintiffs argue that the Agreements are "residential mortgage loans" to which this prohibition applies, citing *Lyons*. Am. Compl. ¶ 111. But that contention is not properly before this Court. The delegation provisions route that threshold arbitrability question to an arbitrator.

Arbitration disputes can involve "three layers": "(1) merits, (2) arbitrability, and (3) who decides arbitrability." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 149 (2024). The first layer concerns liability; the second whether liability must be arbitrated; and the third who decides whether liability must be arbitrated. *See id.* at 148-49. TILA speaks only to the

second-order question of whether the merits of a dispute can be arbitrated. It prohibits only "resolving any controversy or settling any claims" through arbitration. 15 U.S.C. § 1639c(e)(1). It does not bar arbitration of whether a given transaction qualifies as a residential mortgage loan in the first place—and thus does not speak to the third-order question of who decides arbitrability.

A contrary view would be untenably circular. It would reason that an arbitrator cannot decide the second-order arbitrability question because that question must be resolved against arbitrability. Under that logic, the merits of the arbitrability dispute dictate who resolves arbitrability in the first instance. That gets the necessary order of analysis backwards. Courts must enforce valid delegation provisions according to their terms before reaching arbitrability questions. *See Henry Schein*, 586 U.S. at 65 (holding that a court may not "short-circuit the process" by resolving the arbitrability question itself based on the perceived strength of the claim for arbitration).

*Lyons* does not compel a different result. There, the Fourth Circuit addressed a HELOC—an undisputed extension of credit—and considered whether § 1639c(e)(3)'s arbitration bar applied given the timing of the parties' account agreements relative to the statute's effective date. 26 F.4th at 183-86. The court held that § 1639c(e)(3) "precludes pre-dispute agreements requiring the arbitration of claims related to residential mortgage loans" where the arbitration agreement postdated the statute's effective date. *Id.* at 191.

That decision does not speak to TILA's impact (or lack thereof) on delegation provisions. *Lyons* did not involve a delegation clause. It did not even involve a dispute

over the threshold question of whether a transaction extends "credit" in the first place. It determined only that, when a "residential mortgage loan" *is* involved, TILA bars arbitration of the merits of a dispute "related to" that loan. *Id.* at 186-88. Here, that threshold question has not been answered, and it has been delegated to an arbitrator. TILA and *Lyons* require nothing different.

Multiple federal courts have reached this conclusion in the TILA context, correctly holding that TILA does not dictate "who is empowered to decide arbitrability in the first instance." *Veneziani v. Unison Agreement Corp.*, No. 22-cv-1789, 2023 WL 4201961, at *2 (W.D. Wash. June 27, 2023); *Olsen v. Unison Agreement Corp.*, No. 22-cv-1859, 2023 WL 4492346, at *2 (W.D. Wash. June 27, 2023); *Baskin v. EK Real Est. Servs., NY, LLC*, No. 21-cv-727, 2022 WL 17742738, at *10 (E.D. Tex. Sept. 14, 2022); *see also Sitzman v. EK Real Est. Servs. of NY LLC*, No. 21-cv-2666, 2022 WL 17853214, at *7-8 (N.D. Tex. Dec. 21, 2022) (holding that the TILA "argument[] do[es] not attack … the validity of the delegation clause").

Because TILA does not address who decides arbitrability, the Agreements' delegation provisions govern that question. *See Coinbase*, 602 U.S. at 152 ("[A]bsent a successful challenge to the delegation provision, courts must send all arbitrability disputes to arbitration."); *Baskin*, 2022 WL 17742738, at *10 ("[N]othing in the TILA provision[] invoked here … bars the delegation of questions of arbitrability."). Those provisions should be enforced.

### C. Plaintiffs' unconscionability allegations provide no basis for avoiding arbitration.

Plaintiffs' unconscionability allegations likewise do not preclude enforcing the delegation provisions. *See* Am. Compl. ¶¶ 192-97. Although the Amended Complaint contains a series of allegations about how the Agreements are supposedly unconscionable—pointing to the security instrument's power-of-attorney provisions, self-help repossession rights, homestead waiver, and the class-action and jury-trial waivers—none of those allegations challenges the delegation provisions "specifically," as they must to render those provisions invalid. *Rent-A-Ctr.*, 561 U.S. at 72. Thus, any unconscionability issue belongs to the arbitrator.

## III. Alternatively, if the Court reaches threshold arbitrability issues, no basis for avoiding arbitration exists.

The Court's analysis can begin and end with the delegation provisions. But even if the Court were to assess arbitrability, there is still no basis to avoid arbitration. The arbitration agreements sweep broadly, requiring arbitration of "any and all disputes or claims … whether arising out of or relating to this Agreement or the other Investment Documents … or any aspect of the relationship or transactions between" the parties. Decl. Ex. A at 36, § 8.13(k) (as amended); Decl. Ex. B at 23, § 8.13(a); Decl. Ex. F at 37, § 8.13(k) (as amended). Plaintiffs' claims, which are based on the Agreements, plainly fall within this scope. Neither TILA nor any unconscionability argument Plaintiffs might assert warrants nullifying the agreements they entered.

### A. TILA does not cover the Agreements.

TILA poses no obstacle to enforcing the arbitration agreements, because the Agreements are not "residential mortgage loans." Under TILA, a "residential mortgage loan" is (1) a "consumer credit transaction" that is (2) "secured by a mortgage, deed of trust, or other equivalent consensual security interest on a dwelling or on residential real property that includes a dwelling." 15 U.S.C. § 1602(dd)(5). Although the parties secured Hometap's rights under the Agreements through deeds of trust, the Agreements do not extend "credit" and thus do not reflect a "consumer credit transaction." The Agreements are not residential mortgage loans, but option contracts and investment plans that fall outside TILA's bounds.

#### 1. The Agreements do not extend credit.

Under TILA, a "residential mortgage loan" is a "consumer credit transaction," and "credit" is "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." *Id.* § 1602(f), (dd)(5). Because TILA does not define the word "debt," courts resort to dictionaries to identify "the common and ordinary meaning" of that term. *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 380 (4th Cir. 2017) (quotations omitted). In ordinary usage, a "debt" is something "owed"—i.e., a transaction that creates an obligation to repay. Debt, WEBSTER'S THIRD NEW INT'L DICTIONARY (1976); Owe, WEBSTER'S THIRD NEW INT'L DICTIONARY (1976).

This meaning of "credit" or "debt" accords with the plain meaning of the word "loan" as used in TILA: a "loan" allows a debtor to defer payment of a sum received, but

that sum is always eventually due to be repaid (typically with interest). *See* Loan, BLACK'S LAW DICTIONARY (4th ed. 1968) ("[A]dvance of money with an absolute promise to repay"; "contract whereby one delivers money to another who agrees to return equivalent sum"; "payment of money by one to another to be repaid some future day"; "[t]ransaction wherein one party transfers to the other a sum of money which that other agrees to repay absolutely."). A loan therefore, by definition, requires a contractual repayment obligation: the borrower receives funds and commits to returning them, often with interest.

The Agreements do not extend "credit" and thus do not qualify as "loans" under TILA. They impose no contractual repayment obligation, much less one that accrues interest. In exchange for paying Plaintiffs their respective Investment Amounts, Hometap received the option to later obtain a share of each home's value. At no point did Hometap obligate any Plaintiff to repay their Investment Amounts, with or without interest. Until Hometap exercised its option or an Agreement terminated, each Plaintiff's sole obligation was to keep open the continuing offer to sell Hometap an ownership interest in the property.

Even upon exercise, Plaintiffs' only further duty at that point would have been to allow Hometap to share in the home's value according to its ownership stake—not to return the amount that Hometap previously paid. Plaintiffs retained the Investment Amount (and their own share of the home's value) throughout. Because Hometap purchased a right to acquire an ownership interest in each property, what, if anything, Hometap would receive from that interest depended entirely on the property's value at the time of exercise or repurchase. Decl. Exs. A-B, F at 4, § 2.2.

Because the Agreements do not extend Plaintiffs "credit" or give rise to "debt," TILA does not treat them as "credit transaction[s]" or "residential mortgage loan[s]." 15 U.S.C. § 1602(dd)(5). The only federal court to have examined a comparable home equity option contract reached just that conclusion. In *Foster v. EquityKey Real Estate Investments L.P.*, the court held that EquityKey's option agreement did not extend "credit" because the contract contained "no guarantee that the payment received by [the homeowner] need ever be returned." No. 17-cv-67, 2017 WL 1862527, at *4 (N.D. Cal. May 9, 2017). If EquityKey "elect[ed] not to exercise its option," the homeowner would "not owe it any money." *Id.* The agreement was not a loan because the homeowner "did not agree to 'repay absolutely' the option premium payment." *Id.* The same reasoning applies with equal force here.

### 2. The Agreements are option contracts and investment plans.

Rather than loans, the Agreements have the defining characteristics of option contracts and investment plans—categories of contracts that TILA does not govern. The Consumer Financial Protection Bureau's official staff commentary recognizes that both option contracts and investment plans fall outside the definition of "credit." 12 C.F.R. pt. 1026, Supp. I, Subpt. A, cmt. 2(a)(14)(1)(vii), (viii). That commentary warrants "due respect" in interpreting TILA. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 403 (2024).

An option contract extends a "continuing offer" and limits the optionor's "power to revoke [that] offer." Restatement (Second) of Contracts § 25 & cmt. a. (A.L.I. 1981).

Although optionors (here, Plaintiffs) must hold the offer open for the duration of the option period, the optionee (Hometap) retains discretion over whether to exercise the option. That discretion is the hallmark of an option. *Suburban Imp. Co. v. Scott Lumber Co.*, 59 F.2d 711, 715 (4th Cir. 1932) ("The distinguishing characteristic of an option contract is that it imposes no binding obligation upon the person holding the option."). And the Agreements' express terms confirm that they are option contracts, not loans. And their conspicuous, unambiguous "**NOT A LOAN**" declarations reflect the parties' objective intent and understanding of the contract's structure. Decl. Exs. A-B, F at 1; *see also id.* at 12, § 4.1(i) ("Not a Loan").

The Agreements also function as investment plans. Because Hometap's potential proceeds were tied to each property's future value, Hometap's initial payment operated as an investment in which Hometap "risk[ed] the loss of the capital advanced." 12 C.F.R. pt. 1026, Supp. I, Subpt. A, cmt. 2(a)(14)(1)(viii). Hometap assumed the risk that the value of its ownership interest would fall below its initial outlay.

Reflecting that equity-sharing arrangements like Hometap's fall outside existing consumer credit laws and TILA, multiple States have enacted statutes specifically covering such "shared appreciation agreements." *See, e.g.*, S.B. 3551, Pub. Act No. 103-1015, 103d Gen. Assemb., Reg. Sess. (Ill. 2024); H.B. 1150, ch. 568, 443d Gen. Assemb., Reg. Sess. (Md. 2023); S.B. 1257, Pub. Act No. 25-115, Gen. Assemb., Reg. Sess. (Conn. 2025). These legislative efforts underscore that Hometap's contract occupies distinct legal ground from the traditional lending TILA covers.

Because the Agreements are properly characterized as option contracts and investment plans—not as credit transactions and loans—TILA and its arbitration bar do not apply.

**B. The arbitration agreements are not unconscionable.**

Finally, Plaintiffs' unconscionability allegations lack merit. A party asserting unconscionability must prove both procedural and substantive unconscionability. *Tillman v. Com. Credit Loans, Inc.*, 655 S.E.2d 362, 370 (2008). "[P]rocedural unconscionability involves 'bargaining naughtiness' in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power," while "[s]ubstantive unconscionability … refers to harsh, one-sided, and oppressive contract terms." *Id.* Plaintiffs identify neither form of unconscionability here as to the arbitration agreements.

Indeed, although Plaintiffs' Complaint fleetingly mentions the arbitration agreement among allegations of one-sidedness, Am. Compl. ¶ 196(d), Plaintiffs identify no alleged procedural or substantive defect specific to the arbitration agreement itself. Nor could they. The provision is conspicuous—set off under the capitalized, underlined heading "DISPUTE RESOLUTION BY BINDING ARBITRATION" and introduced by the instruction to "PLEASE READ THIS SECTION CAREFULLY AS IT AFFECTS YOUR RIGHTS"—and mutual, binding Hometap and the homeowner on identical terms. Decl. Ex. A at 36, § 8.13 (as amended); Decl. Ex. B at 23, § 8.13; Decl. Ex. F at 37, § 8.13 (as amended). Each Agreement also gave Plaintiffs a three-business-day right to cancel the entire transaction, which neither exercised. *Id.* at 3, § 1.3. And although Plaintiffs

allude to their right to jury trial, arbitration agreements present "no constitutional impediment" to that right under North Carolina law. *Kiell v. Kiell*, 633 S.E.2d 827, 830 (2006). In sum, nothing supports an unconscionability finding as to the arbitration agreements. *See Heidbreder v. Epic Games, Inc.*, 438 F. Supp. 3d 591, 598 (E.D.N.C. 2020) ("[T]he terms at issue—the arbitration agreement, delegation clause, and class-action waiver—are common terms in modern contracts that have recently been sanctioned by the courts and can hardly be considered substantively unconscionable.").

*  *  *

Plaintiffs voluntarily entered into Agreements that require arbitration of all issues, including any threshold issues of arbitrability and enforceability. Plaintiffs provide no basis for this Court to look past that agreement: they do not specifically challenge the delegation provisions, and neither TILA nor *Lyons* overcomes the parties' agreement to delegate. But even if the Court were to reach the merits of Plaintiffs' arbitrability arguments, those arguments fail—the Agreements are not "residential mortgage loans" because they extend no credit and create no debt. This dispute belongs in arbitration.

## CONCLUSION

For these reasons, Hometap requests that this Court (1) compel Plaintiffs to submit their claims to individual, binding arbitration, and (2) stay this action pending the outcome of arbitration under 9 U.S.C. § 3.

Dated: September 18, 2026

Respectfully submitted,

MCGUIREWOODS LLP

*/s/ Armina A. Manning*

Armina A. Manning (NC Bar No. 60436)
Jonathan Y. Ellis (NC Bar No. 41220)
MCGUIREWOODS LLP
501 Fayetteville Street, Suite 500
Raleigh, NC 27601
Phone: (919) 755-6688
Email: aamanning@mcguirewoods.com
Email: jellis@mcguirewoods.com

*Counsel for Hometap Equity Partners, LLC, Hometap HEI Fund IV SPV II, LLC, and Hometap Investment Partners II, L.P.*

## CERTIFICATE OF COMPLIANCE WITH WORD LIMITATION

I hereby certify that this brief complies with the type-volume limitation set forth in Local Rule 7.3(d), excluding the caption, signature lines, certificate of service, and this certificate, as counted by the word-processing system used to prepare this brief.

Dated: September 18, 2026

*/s/ Armina A. Manning*
Armina A. Manning (NC Bar No. 60436)

*Counsel for Hometap Equity Partners, LLC, Hometap HEI Fund IV SPV II, LLC, and Hometap Investment Partners II, L.P.*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing document to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered participants.

Dated: September 18, 2026

*/s/ Armina A. Manning*
Armina A. Manning (NC Bar No. 60436)

*Counsel for Hometap Equity Partners, LLC, Hometap HEI Fund IV SPV II, LLC, and Hometap Investment Partners II, L.P.*